IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK G. CLARK, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 08-403-GMS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM**

**I.   INTRODUCTION**

This action arises from the denial of Frank G. Clark's ("Clark") claim for Social Security disability benefits. Clark applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act (the "Act") on June 16, 2004. 42 U.S.C. §§ 401-433, 1381-1383f. In his application, Clark claimed that he became disabled due to testicular cancer tumors and necessary chemotherapy treatments. (Tr. at 64-65.) Clark claimed his disability was prolonged by injuries sustained in a motor vehicle accident in April of 2005. (Id. at 489.) After the Commissioner denied the application, Clark requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 35-48.) Following the hearing, ALJ issued a written opinion on June 8, 2006 denying Clark's application for DIB and SSI. Specifically, the ALJ found that although Clark underwent chemotherapy and various surgeries for testicular cancer, and suffered injuries from a motor vehicle accident, he is able to perform certain light work. (Id. at 16-17.) Clark requested a review of the ALJ's decision by the Appeals Council, which denied review on May 2,

2008. (Id. at 4-7.) On June 16, 2008, Clark filed a timely appeal with this court. (D.I. 2.) Currently before this court are parties' cross-motions for summary judgment. Because the court finds that the ALJ's decision meets the substantial evidence test established by 42 U.S.C. § 405(g), it will deny Clark's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision of the ALJ.

## II. BACKGROUND

Clark was born on March 2, 1963. (Tr. at 477.) He was a forty-four year old male who was employed as a mason worker when he filed for DIB and SSI on June 16, 2004. (Id.) Clark's claim stems from chemotherapy and surgeries to remove his testicular cancer, as well as a subsequent motor vehicle accident that caused damage to his back. (Id. at 482-483, 490.) After previous surgeries and chemotherapy, Clark had a final surgery for testicular cancer in April 2005. (Id. at 481.) Treatment for the injuries sustained from Clark's motor vehicle accident ended February 2006. (Id. at 484.) Despite the completion of treatment for both ailments, Clark claims that he is still disabled under the Act. (Id. at 488-89.) To be eligible for DIB and SSI, Clark must demonstrate the he is disabled within the meaning of sections 216(I), 223(d) and 1614(a)(3)(A). (Id. at 14.)

### A. Evidence Presented

To support his claim, Clark produced his medical records for both his testicular cancer and injuries resulting from the motor vehicle accident. The court will summarize these records.

1. Testicular Cancer

Clark went to the Glasgow Medical Center emergency room on March 20, 2004 because of a pain in his right lower abdomen that he noticed after lifting a heavy piece of plywood at work. (Tr. at 122-23.) At the emergency room, he was diagnosed with a possible hernia. (Id. at 22.) Two days

later Clark noticed a lump in his right groin which Dr. Clayton also believed to be indicative of a hernia. (Id.) Clarke then went to a board-certified surgeon who ordered him to have a CT scan on April 6, 2004. (Id. at 340-42.) The CT scan revealed multiple round masses in Clark's pelvic cavity and left inferior pelvis. (Id. at 341.) On April 27, 2004, Clark had a testicular ultrasound, which revealed an unverified mass on his left testicle. (Id. at 325-26.) The following day Dr. Clayton excised a mass from Clark's right groin area. (Id. at 361-62.) Clark than received an ultrasound of his left testicle, and as a result, Clark was diagnosed with testicular cancer. (Id. at 195.) This diagnosis was later confirmed by a left orechtomy that Clark underwent on May 5, 2004. (Id.)

To combat the testicular cancer, Clark was hospitalized from May 16 to May 21, 2004 to receive a five day session of chemotherapy. (Id. at 141.) Two subsequent rounds of chemotherapy occurred from June 6 to June 11, 2004 (id. at 135-39) and June 27 to July 2, 2004 (id. at 126-33). On August 10, 2004, following several rounds of chemotherapy, Clark underwent a CT of his abdomen and pelvis. (Id. at 188.) The CT revealed continued adenopathy, most likely due to metastatic testicular cancer. (Id. at 189.) After consulting Dr. Schanne on August 17, 2004, Clark agreed to go ahead with a complete retroproperitoneal lymph nodes desection. (Id. at 191) A PET tumor metabolic evaluation, done on August 26, 2004, indicated that there was no evidence of a recurrent disease. (Id. at 198.) Following this positive evaluation Dr. Wozniak required periodic evaluation of Clark to ensure that the testicular cancer does not return. (Id. at 235.)

Clark returned to work on November 10, 2004. (Id. at 91.) On November 29, 2004, Clark returned to Dr. Clayton because of a growing protrusion in his lower abdomen. (Id. at 289.) Clark claimed this occurred after lifting a heavy material while at work. (Id.) After Clark received a CT scan, Dr. Clayton concluded that he had 4 areas where prior masses were extracted that were now

collecting fluid. (Id. at 308.) This was identified as an abdominal wall mass and was excised on December 13, 2004. (Id. at 292-93.) Dr. Clayton stated that Clark had completed his post-operative recovery on December 22, 2004 and would be ready to return to regular duty work on December 27, 2004. (Id. at 286.) Clark did not return to his job. (Id. at 65.)

2.  Motor Vehicle Accident

On April 2, 2005 Plaintiff sustained injuries from a motor vehicle accident. (Tr. at 359.) Clark claims the accident caused neck pain and stiffness, which also extended to his shoulders and back. (Id. at 490-91.) Dr. Peterzell, a family physician, initially examined Clark on April 13, 2005. (Id. at 364.) Following that initial exam, Dr. Peterzell diagnosed Clark with, *inter alia*, strains and sprains in both the back and shoulders. (Id. at 362.) As a result of this diagnosis, Dr. Peterzell prescribed to Clark a series of physical therapy modalities. (Id.) On May 31, 2005, before concluding his physical therapy, Dr. Peterzell held that Clark was totally disabled as of April 14, 2005. (Id. at 439.)

On August 5, 2005, Clark received an MRI to determine the cause of his lower back pain. (Id. at 436-37.) The results of the MRI indicated "spondylotic and degenerative changes in the lumbar spine" along with a small disc herniation "encroaching on the ventral epidural space." (Id.) The MRI did not reveal any abnormalities in Clark's lumbar vertebral bodies or conus medullaris. (Id. at 436.) Following the MRI, Dr. Peterzell stated that Clark had lumbar disc disease, lumbar degenerative joint disease, and disc herniation with "a fair prognosis for partial recovery." (Id. at 442.)

Clark's final evaluation from Dr. Peterzell was on January 18, 2006. (Id. at 362.) This visit occurred after the completion of his physical therapy regime. (Id.) The evaluation described Clark as having "some neck pain" and discomfort and pain in his lower and mid back, as well as in his right

posterior shoulder. (Id.) Clark had a 75-80% range of motion with his lumbar spine. (Id. at 361.) Despite these results, Dr. Peterzell found that Clark was in no acute distress and his sensorimotor examination was essentially intact. (Id.)

### B.     Hearing Testimony

1.     Frank Clark's Testimony

At the June 8, 2006 hearing before the ALJ, Clark testified about his background, the nature of his disability, and his claim for disability benefits. (Tr. at 476-95.) Specifically, Clark discussed his past employment as a mason worker. (Id. at 477-79.) In addition, Clark explained that while working as a mason in April of 2004, he noticed that something "popped" in the right side of his pelvic area while he was attempting to lift a piece of plywood. (Id. at 479-80.) Besides returning to work for a week in November of 2004, Clark claims he has been unable to return to work due to ongoing back and right shoulder pain. (Id. at 488.)

In addition to his past employment and the nature of his disability, Clark also testified about the course and extent of his medical treatment. (Id. at 480-83.) Specifically, Clark testified that he underwent five separate procedures to remove lymph nodes and his left testicle. (Id. at 481.) Clark further reported that during most of the summer of 2004, he was receiving chemotherapy. (Id. at 482.) He stated that he was hospitalized during three weeks of the chemotherapy and that the rest of the treatment was done outpatient. (Id.) Clark testified that the chemotherapy left him feeling weak and drained. (Id. at 482-83.) Clark also complained of continual numbness and pain which contributed to the loss of use in his right arm. (Id. at 483.) Clark stated that this was the result of the anesthesiologist hitting a nerve with the IV that was placed in his arm during his testicular operation. (Id.)

5

Clark went on to describe how he was injured from an auto vehicle accident in April of 2005. (Id. at 489.) Clark discussed the back and shoulder pain that resulted from the accident. (Id. at 490.) Because of this pain, Clark receives cortisone shots that provide temporary relief. (Id. at 491.) Clark also indicated that he takes Perocet on a daily basis to cope with the pain. (Id.) Clark estimated that he could lift a limit of ten pounds without hurting his back. Clark also claimed that he can only stand for a few minutes without incurring pain. (Id. at 492.)

In describing his daily activities, Clark testified that he tries to help out around the house by doing daily chores such as cleaning and laundry. (Id. at 493.) Clark also admitted that from time to time he does the dishes and cooks. (Id.) Clark stated that although he tries to help out, his girlfriend does most of the work around the house. (Id. at 486.) Clark also noted that he engages in social activities such as going out to eat and church, but stated that he is unable to drive due to his back pains. (Id. at 494.)

2.  The Vocational Expert's Testimony

At the same hearing before the ALJ, the vocational expert ("VE") offered testimony regarding Clark's background, skills and limitations, and the number of jobs that exist in the national economy that a person of Clark's age, education, and skills may perform. (Tr. at 495-500.) Specifically, the VE testified that the exertion and skill level of Clark's work prior to his injury was semiskilled. (Id. at 496.) In addition, the VE stated that the line of work Clark performed is industry-specific, and not transferable to other areas of work. (Id.) The VE noted that a hypothetical person, as described by the ALJ, with Clark's residual functioning capacity would not be able to perform Clark's prior work as a mason. (Id. at 496-97.) According to the VE, giving Clark's functional limitations, there are many sedentary and light work activities that he could employed to undertake. (Id. at 497.) The VE

claimed that Clark would be qualified, for example, to work as a packer, inspector, security guard, or assembler. (Id.)

### C. The ALJ's Findings

The five step evaluation requires the following sequential analysis:

> [The Commissioner] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. 20 C.F.R. § 404.1520(b). If an individual is found not to be engaged in substantial gainful activity, the [Commissioner] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(c). If the [Commissioner] determines that the claimant suffers from a severe impairment, the [Commissioner] will next determine whether the impairment meets or equals a list of impairments in Appendix I of sub-part P of Regulations No. 4 of the Code of Regulations. 20 C.F.R. § 404.1520(d). If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [Commissioner] must determine if the individual is capable of performing his past relevant work considering his severe impairment. 20 C.F.R. § 404.1520(e). If the [Commissioner] determines that the individual is not capable of performing his past relevant work, then he must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy. 20 C.F.R. § 404.1520(f).

*West v. Astrue*, C.A. No. 07-158, 2009 WL 2611224 (D. Del. August 26, 2009) (citing *Brewster v. Heckler*, 786 F.2d 581, 583-84 (3d Cir. 1986)). Based on the factual evidence and the testimony of Clark and the Vocational Expert, the ALJ determined that Clark was not disabled, and, therefore, was not eligible for DBI or SSI. (Tr. at 21.) The ALJ's findings are summarized as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since March 20, 2004, the alleged onset date (20 C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: residuals of testicular cancer and degenerative disc disease of the lumbar spine (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [T]he claimant has the residual functional capacity to perform light work, i.e., he can sit for prolonged periods, stand and walk up to six hours overall in an eight hour day, and lift and carry weights of up to 10 pounds frequently and 20 pounds occasionally. He needs to be able to alternate sitting and standing as needed (i.e., sit 20 minutes then stand 10 minutes), and he is limited to jobs that do not require prolonged climbing, balancing, or stooping or that expose him to heights or hazardous machinery. Taking into account his right shoulder sprain/strain discussed previously herein and found "not severe," he has some moderate limitations in his ability to push and pull with his right upper extremity at the time of his decision.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on March 2, 1963 and was 41 years old on the alleged disability onset date, which is defined as a younger individual age 45-49 (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from March 20, 2004 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Id. at 20-21.)

## III. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party[,]' but [refrain from] weighing the evidence or making credibility determinations." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). If the court determines that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

### B. Review of the ALJ's Findings

The court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence does not mean a large or a considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Rather, it has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

Credibility determinations are the province of the ALJ, and should be disturbed on review only if they are not supported by substantial evidence. *Pysher v. Apfel*, Civ. A. No.

00-1309, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). In social security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to Fed. R. Civ. P. 56(c). *See Woody v. Sec. of the Dep't of Health & Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## IV. DISCUSSION

In this appeal, Clark argues that the Commissioner did not have substantial evidence to support the denial of his application for DIB and SSI. (D.I. 15 at 12.) Clark first argues that the ALJ committed reversible error by failing to give appropriate weight to the physician's opinions. (Id.) Specifically, Clark contends that Dr. Peterzell was the treating physician, and that the ALJ therefore should have treated his opinion as controlling. (Id. at 14.) Clark also contends that the ALJ failed to indicate the weight that was given to each treating source, and failed to give appropriate weight to the MRI evidence. (Id.) Clark also argues that the ALJ erred at step three of the evaluation process by concluding that he did not meet or equal any of the listings in the regulations. (Id. at 17.)

After having considered the parties' arguments and submissions, the court finds that the ALJ properly weighed the medical opinion of Clark's treating physician with the other physicians' opinions and other evidence. The statutory standard for considering a treating physician's opinion clearly establishes that if a "treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically

10

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). The Court of Appeals for the Third Circuit discussed the appropriate weight to be given to opinions of treating physicians in *Plummer v. Apfel*, 186 F.3d 422 (1999), where it wrote that "treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"[1] 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). In the event that the record contains conflicting evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). In order to reject a treating source's opinion outright, the ALJ must base the rejection on contradictory medical evidence and "not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (citing *Plummer*, 186 F.3d at 429).

In this instance, the ALJ gave proper weight to the medical opinion and objective record evidence of Dr. Peterzell. Compared to the record as a whole, Dr. Peterzell's opinions were speculative concerning the employability of Clark. (Tr. at 19.) Dr. Peterzell's claim that Clark was "totally disabled" (id. at 362) is contradicted by specific medical evidence. (Id. at 19.) First, although Clark suffers from back, neck, and shoulder pain, Dr. Peterzell noted at

---

[1] The regulations require that the ALJ evaluate the following factors: (1) examining relationship; (2)(i) length of treatment relationship and the frequency of examination; (2)(ii) nature and extent of the treatment relationship; (3) degree to which evidence supports the opinion; (4) consistency of the record as a whole; (5) specialization of the physician; and (6) other factors. *See* 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6).

Clark's last physical examination that he had 75-80% motion in his lumbar spine, that his sensorimotor examination was essentially intact, and that he was in "no acute distress." (Id. at 360-62.) Thus, Dr. Peterzell's own diagnosis indicates that Clark is not completely disabled. (*See* id. at 359-63.) In addition, Clark's admitted activities further indicate that he is not totally disabled. (Id. at 19.) Clark stated that he engages in various household duties such as washing dishes and cooking. (Id. at 493.) Furthermore, Clark admitted that he is able to stand for a limited period of time and sit for an extended period of time as long as he remains comfortable. (Id. at 492-93.)

The court also disagrees with Clark's contention that the ALJ erred at step three of the evaluation process by concluding that he did not meet or equal any of the listings in the regulations. (D.I. 15 at 17.) Step three requires an evaluation of the claimant's impairment and whether that impairment meets the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 15.) The claimant bears the burden of providing medical evidence that supports an impairment that meets or is equal to those listed in the regulations. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000). The ALJ provided specific facts indicating that Clark's impairment did not meet the listing requirements. (Tr. at 17.) The specific facts that were previously discussed were supported by an abundance of medical evidence and testimony that Clark's muscoskeletal impairments did not result in an inability to work. (Id.)

## V. CONCLUSION

For the aforementioned reasons, the court concludes that the ALJ's denial of DIB and SSI is based on substantial evidence. Accordingly, the court will deny Clark's motion for

summary judgment and grant the Commissioner's motion for summary judgment.

Dated: November 9, 2009

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FRANK G. CLARK, III, )
)
      Plaintiff, )
)
v. ) C.A. No. 1:08-403-UNA
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL )
SECURITY )
)
      Defendant. )
_____ )

### ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Clark's motion for summary judgment (D.I. 14) is DENIED.

2. The Commissioner's motion for summary judgment (D.I. 16) is GRANTED.

3. The decision of the Administrative Law Judge is AFFIRMED.

4. The Clerk of the Court is directed to close this case.

Dated: November 9, 2009

CHIEF UNITED STATES DISTRICT JUDGE